18554. J. C. LEWIS MOTOR CO., INC., *et al. v.* MAYOR &c. OF THE CITY OF SAVANNAH.

Argued April 13, 1954—Decided May 11, 1954.

*Kennedy & Sognier*, for plaintiff in error.

*Edward M. Hester, Aaron Kravitch*, contra.

HAWKINS, Justice. (After stating the foregoing facts.) Only the 5th and 6th headnotes require elaboration. It is contended by the plaintiffs that City Code § 7-101, which provides for a Board of Purchase composed of five members, consisting of the Mayor, Chairman of the Finance Committee, and three other Aldermen, was violated because the City Comptroller is not by law a member of the Board of Purchase and had no right to open the bids; that City Code § 7-102, providing that a quorum of the Board of Purchase shall consist of three members, was violated because the bids were opened at a meeting of the Board of Purchase at which only two members were present; that City Code § 7-103 was violated because by it the sole and exclusive control of purchases is vested in the Board of Purchase, and gives the City Comptroller and other Aldermen and employees not on the Board of Purchase no right to participate therein, and that the Committee as a Whole usurped the prerogatives of the Board of Purchase by attempting to make an award contrary to § 7-103, which gives "sole and exclusive purchase of all supplies and materials of whatsoever nature" to the Board of Purchase; and that City Code § 7-108, which provides that the "Supervisor of Purchases shall keep a complete and accurate

record of all bids submitted for all supplies, equipment, etc.," was violated by the City Comptroller participating in the meeting in the absence of the Supervisor of Purchases.

Counsel for the plaintiffs argue that the alleged illegal acts of the City Comptroller herein enumerated resulted in injury to them by reason of certain members of the Board of Purchase later being informed that the difference in the bids amounted to $25 per vehicle, whereas the actual difference was $39.21 each. While the evidence of the Mayor and one other member of the Board of Purchase indicates that they were informed that the difference between the bids was approximately $25 per unit, the evidence further discloses that all five members of the board were present and unanimously voted on the matter, and that "the Board of Purchase were the ones who voted" to award the contract to the Chevrolet dealer. There is no evidence that the three other members of the Board of Purchase, two of whom were present when the bids were opened, were not aware of the actual difference between the two bids in question, which had been tabulated and were available to all the members.

The Supervisor of Purchases testified that he was present at the meeting when the bids were opened and "tabulated them," and that "after opening and reading the bids they adjourned." He further testified, "after the bids are opened I may sit in at the meeting or they may decide on the matter at a closed meeting themselves; I am not a member of the board . . . I am directly under Mr. Bailey, the Comptroller; the usual procedure before they [Board of Purchase] act on a matter, it goes to the Comptroller for final verification and then in turn to me, and this procedure was followed in this case." The City Comptroller testified: "The activities of the Board of Purchase are directly under the Comptroller . . . the Supervisor of the Board of Purchase reports to me . . . I am required to attend meetings of all Committees of the Whole and all Council meetings."

The Board of Purchase was clearly acting within the scope of its powers; no evidence was adduced to show that it acted fraudulently or corruptly in awarding the contract for the purchase of ten automobiles to the Chevrolet dealer, or that the presence of other Aldermen at the time the contract was awarded by the Board of Purchase in any way influenced its action, or injured

the plaintiff. The board is a branch of the municipal government, invested with discretion in the purchase of all supplies and materials of whatsoever nature needed or required by any department of the city government. Under such circumstances the rule is that, where a municipal board is authorized to do a particular act in its discretion, the courts will not control this discretion unless manifestly abused, nor inquire into the propriety, economy, and general wisdom of the undertaking, or into the details of the manner adopted to carry the matter into execution. *Chipstead* v. *Oliver,* 137 *Ga.* 483, 486 (73 S. E. 576), and cases there cited. The trial judge was authorized to find that the board did not act arbitrarily, fraudulently, or corruptly, and that it did not abuse its discretion.

*Judgment affirmed. All the Justices concur.*