49953. CAMP CONCRETE PRODUCTS v. CENTRAL OF GEORGIA RAILWAY COMPANY.

BELL, Chief Judge.

Plaintiff sued the railroad for damages allegedly caused by the negligent delivery of a railroad carload of cement to plaintiff's place of business. Both parties moved for summary judgment. Defendant's motion was granted and plaintiff's was denied.

The pertinent facts are not in dispute. The defendant delivered a rail carload of fast-setting asbestos type of cement over an unloading pit at the plant of the plaintiff. It was unloaded by plaintiff. This cement was of a type that its use by the plaintiff would have ruined plaintiff's equipment and plant. Plaintiff was then required to remove this cement from one of its storage silos. The parties prior to this incident entered into a licensing agreement whereby the plaintiff as licensee was permitted to construct, maintain and use an unloading pit under an industrial spur track owned by plaintiff and

operated by the railroad. This agreement provided as follows: "Licensee accepts the privilege hereby granted with full cognizance of the risk of loss of life, personal injury or property loss or damage which may result from the construction, maintenance, use or presence of said pit, or contents on premises of Company, or Company operations over or in the vicinity of said pit, and agrees that neither Company nor any other corporation controlling, controlled by or under common control with Company shall have any responsibility in connection therewith but that Licensee will exercise said privilege at the sole risk of Licensee, and will indemnify and save harmless Company or any other corporation controlling, controlled by or under common control with Company, from and against all such loss, injury or damage, whether resulting from the negligence of Company or any other corporation controlling, controlled by or under common control with Company, or otherwise." *Held:*

The defendant maintains that the indemnity and save harmless portion of the licensing agreement precludes recovery by plaintiff, particularly that part which relates to company operations over the pit. Plaintiff, on the other hand, argues alternatively: (1) That its damages did not result from the construction, maintenance, use or presence of the pit or contents on premises of defendant or defendant's operations over or in the vicinity of the pit; or (2) that the indemnification covenant was unenforceable as being contrary to public policy. With respect to the first argument, the plaintiff's complaint clearly alleges that the defendant placed the misdelivered car of cement over the unloading pit. The defendant admits for the purposes of this appeal that it negligently delivered the car to plaintiff's plant due to an error which occurred at defendant's main rail yard. Even in absence of this admission of negligence, the conclusion is inescapable from the pleadings and the evidence that a contributing proximate cause of the damage was defendant's placement of the car over the unloading pit. Therefore, the damages sought to be recovered came within the indemnification covenant. With reference to the second argument that the covenant is contrary to public policy, the plaintiff rests this contention on Code

§ 20-504, as amended. This statute in part states: "A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building structure, appurtenances and appliances including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee, is against public policy and is void and unenforceable..." An analysis of this statutory language shows that it only applies to contracts relating to construction, alteration, repair, or maintenance of a building structure, appurtenances and appliances and to personal injury and property loss arising therefrom. The indemnification provision of the licensing agreement here is broader and indemnifies with respect to property loss resulting from three different activities, they are: (1) The construction, maintenance, use, or presence of the pit, or (2) contents on premises of company, or (3) company operations over or in the vicinity of the pit. Code § 20-504 may be applicable to the first category because it expressly deals with the construction and maintenance of the pit. However, the other two have nothing to do with the construction, alteration, repair, or maintenance of a building structure. While the first contingency may be within the prohibition, the other parts of the indemnity agreement are separable and enforceable. Under the facts of this case the conclusion is demanded as a matter of law that defendant was released by contract from any liability in this case for the damages were caused by defendant's operations over the pit. "If the contract be severable, that which is legal will not be annulled by that which is illegal." Code § 20-501. The defendant's motion for summary judgment was properly granted.

*Judgment affirmed. Marshall, J., concurs. Webb, J., concurs in the judgment only.*

ARGUED JANUARY 6, 1975 — DECIDED
APRIL 10, 1975.

*Grogan, Jones & Layfield, Milton Jones,* for appellant.

*Hatcher, Stubbs, Land, Hollis & Rothschild, William B. Hardegree,* for appellee.